UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DARLENE ANNETTE KITT,

      Plaintiff,

v.                                    Case No. 3:20-cv-05485-MCR-HTC

ANDREW SAUL,
Commissioner of Social Security,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

This case is before the Court for review of the final determination of the Commissioner of Social Security ("Commissioner") denying Darlene Annette Kitt's ("Claimant" or "Kitt") application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-34.[1] The matter was referred to the undersigned magistrate judge for a report and recommendation pursuant to the authority of 28 U.S.C. § 636 and Local Rule 72.2(D).

---

[1] For purposes of determining whether a claimant is disabled, the law and regulations governing a claim for disability benefits are identical to those governing a claim for supplemental security income benefits. *See Patterson v. Bowen*, 799 F.2d 1455, 1456 n.1 (11th Cir. 1986). Thus, regardless of a whether a referenced statute herein addresses DIB or SSI, only, the legal principle at issue applies equally to both claims.

Kitt raises one (1) issue on appeal—that the ALJ erred in discrediting her subjective complaints regarding the severity of her symptoms based on the medical care she has received. Upon review of the record before the Court, the undersigned concludes the findings of fact and determinations of the Commissioner are supported by substantial evidence. Thus, the undersigned respectfully recommends the decision of the Commissioner be affirmed.

## I.    BACKGROUND

At the time of the hearing, Kitt was 51 years old. Tr. 32.[2] Kitt has a 9th or 10th grade education. Tr. 32, 206. Kitt was 5' 5" tall and weighed 230 pounds at the time of the hearing. Tr. 32. Prior to her onset disability date, Kitt had previously worked as a hotel housekeeper. Tr. 34-35.

On December 12, 2017, Kitt protectively filed an application for DIB, claiming disability with an onset date of August 31, 2017, for mid-stroke, sciatica nerve damage, and asthma. Tr. 60. The Commissioner denied the application initially and on reconsideration. Tr. 67, 80. The ALJ conducted a hearing on September 12, 2019. Tr. 29-58. On October 15, 2019, the ALJ issued her decision, finding Kitt not disabled under the Act. Tr. 15, 24. On March 31, 2020, the Appeals Council upheld the denial of disability, making the ALJ's determination the final decision of the Commissioner. Tr. 1.

---

[2] The transcript in this case consists of seven volumes and will be referenced herein by "Tr. __", for the consecutively numbered pages.

## A. Pertinent Medical History

Kitt's pertinent medical history begins on October 4, 2017,[3] when Kitt walked into the emergency room at Baptist Hospital for abdominal pain. Tr. 345-46, 353. Kitt stated she had been experiencing dull and constant abdominal pain for the past four (4) days. Tr. 346. Kitt also stated "the discomfort comes and goes." Tr. 346. Kitt reported a history of pancreatitis and that she drinks 3-4 beers a day. Tr. 347. However, she denied any chronic pain. Tr. 347.

Kitt reported pain in her left upper quadrant and stated she fell on her left wrist. Tr. 346. X-rays were performed of Kitt's wrist, which showed no abnormalities, and also of her abdomen, which showed nonobstructive bowel gas pattern. Tr. 346, 360-61. Kitt assigned the pain a rating of 8 out of 10, with 1 being the best and 10 being the worst; however, Kitt also stated the severity of the pain was "moderate but tolerable." Tr. 346. Kitt was alert and did not appear to be in acute distress. Tr. 347. A physical examination showed Kitt was neurologically intact and a musculoskeletal exam showed no extremity tenderness, no hemorrhage or infection. Tr. 348. Her left wrist exhibited a decreased range of motion, but had a normal tendon exam with no tenderness or modules. Tr. 348.

Kitt was discharged about two (2) hours later and assigned her pain a rating of 0 out of 10. Tr. 351. Kitt was prescribed hydrocodone bitartrate acetaminophen

---

[3] Although the transcript contains medical records that predate the onset date, the undersigned did not consider them as the undersigned did not find them relevant to the issue presented.

for pain management and given discharge instructions for acute pancreatitis.   Tr. 351, 353.

On October 10, 2017, Kitt returned to the emergency room, once again for adnominal pain.   Tr. 322.   She reported having been treated for acute pancreatitis, but that her last episode was 4-5 years ago (records, however, showed her last treatment was in 2011).   Tr. 322.   The pancreatitis is secondary to alcohol abuse. Tr. 322-23.   Kitt reported drinking at least four (4) 16-ounce beers a day.   Tr. 322. Kitt was alert and was not in acute distress.   Tr. 323.   A physical examination showed preserved muscle mass with full range of motion.   Tr. 323.

Kitt was assessed with acute pancreatitis in the setting of alcohol abuse, alcohol abuse disorder, tobacco abuse, anemia and hypertension.   Tr. 323.   She was counseled to stop smoking and drinking.   Tr. 323.   Kitt was discharged two (2) days later with a diagnoses of acute epigastric pain secondary to acute on chronic pancreatitis, persistent nausea, and history of hypertension and alcohol abuse.   Tr. 320.

On November 25, 2017, Kitt returned to the Baptist Hospital Emergency Room with complaints of headache, blurred vision, and dizziness, which started a week earlier.   Tr. 280.   She explained her husband found her "over the bathtub" after hitting her head.   Tr. 280.   According to the emergency room notes, Kitt reported she was sitting on the toilet three (3) days earlier when she felt dizzy, tried

to grab a shower curtain to catch herself, but fell and hit her right shoulder blade on the tub, and believes she blacked out.  Tr. 263.

A CT showed Kitt had a bilateral subacute subdural hematomas and a procedure was performed to drain and evacuate the hematoma.  Tr. 275.  A physical exam post-operation showed Kitt was in no acute distress, was "4+ on her left grip, biceps, triceps, deltoids, iliopsoas, quadriceps, hamstrings, dorsiflexion, and plantar flexion" and 5/5 strength on the right side in those same areas.  Tr. 275.  Throughout her stay she had a Glasgow Coma Scale (GCS)[4] of 15.  Tr. 275.

Kitt was discharged with a charity home health physical therapy visit and a rolling walker.  Tr. 275.  At discharge, she had no decreased strength on her right side, 4 out of 5 on her left upper side, and 3 out of 5 on her lower left side.  Tr. 281.  Kitt was also instructed to obtain a shower chair from Goodwill.  Tr. 275-76.

On January 26, 2018, Kitt went to Community Health of Northwest Florida for a follow-up exam.  Tr. 400.  Kitt reported experiencing indigestion, abdominal pain/cramping for the last ten (10) days, hypertension and low back pain.  Tr. 400.  She rated her pain as an 8 out of 10.  Tr. 401.  A physical exam showed she was alert, in no acute distress, oriented x4, and was neurologically intact.  Tr. 401.  No

---

[4] The Glasgow Coma Scale (GCS) is used to objectively describe the extent of impaired consciousness in all types of acute medical and trauma patients. The scale assesses patients according to three aspects of responsiveness: eye-opening, motor, and verbal responses, with 3 being the lowest score and 15 being the highest score.
*See* https://www.ncbi.nlm.nih.gov/books/NBK513298/.

abnormalities were identified.  Tr. 401.  She was maintained on her current medications.  Tr. 402.

On April 6, 2018, Kitt underwent a disability examination with Dr. Hillman. Tr. 431.  Kitt reported having mild weakness on her left side, following a "mild stroke", having a pain rating of 9/10 because of her sciatica, for which she takes ibuprofen, and having chronic coughing and wheezing, which is worst at night.  Tr. 431.

During this examination, Kitt stated she was not taking any medication because of lack of insurance and ability to pay.  Tr. 431.  There is no indication of how long she had been off her medications.  Kitt was alert, oriented, well-nourished, well-groomed, and positive during the examination.  Tr. 433.  Although Kitt complained of tinnitus and shortness of breath, a physical examination showed normal breath sounds, no crackers, wheezes, or rubs.  Tr. 434-36.  Kitt's posture and gait were normal, and Kitt did not use an orthotic or assistive device; however, Kitt was not able to walk on heels, toes, or tandem walk.  Tr. 435.  Kitt's strength was a 5/5 in her left grip and all extremities, left and right side.  Tr. 436.  Kitt exhibited decreased strength only in her right grip, with a rating of 4/5.  Tr. 436. Kitt's range of motion in all areas of the spine and upper and lower extremities were within normal range.  Tr. 437.  Dr. Hillman suggested Kitt consider physical

therapy or the use of a cane to prevent further falls, stretching for the sciatica, and be evaluated for maintenance medication for her asthma.  Tr. 438.

On September 10, 2018, Kitt returned to Community Health of Northwest Florida for a follow up exam and for medication refills.  Tr. 448-51.  Kitt rated her pain level as an 8 out of 10; however, Kitt was alert, not in acute distress, and was oriented during her visit.  Tr. 449-50.  The assessment and plan was to continue Kitt on the same medications.  Tr. 450.

On December 10, 2018, Kitt returned to Community Health of Northwest Florida for hypertension, indigestion, sciatica, arthritis, asthma, and a urinary tract infection.  Tr. 473.  Although Kitt described her pain as a 7 out of 10, she appeared alert and in no acute distress.  Tr. 475.  Her physical examination revealed no abnormalities. Tr. 475.  Treatment notes also indicate that, although Kitt reported suffering from hypertension, the symptoms do not include headache, confusion, visual disturbance, dizziness, or shortness of breath.  Tr. 473.  The notes indicate Kitt had "good compliance with treatment, good tolerance of treatment and good symptom control" over her hypertension.  Tr. 473.  Kitt reported she had been to the emergency room twice for sciatica and was given medications.  Tr. 473.  Kitt's prescriptions were renewed and a follow up visit was scheduled.  Tr. 475.

On April 25, 2019, Kitt visited Community Health of Northwest Florida for a scheduled follow up visit and monitoring of hypertension, weight loss, and

asthma.   Tr. 480.   The records show that Kitt did not need refills on her hypertension medication or medication for her gout and that she received an inhaler through a prescription assistance program.   Tr. 480.   Kitt reported having abdominal pain the last four (4) days and rated her pain as an 8 out of 10.   Tr. 482. Kitt was continued on current medications for gout/arthritis and hypertension.   Tr. 482.   The plan for her sciatica was to have an x-ray, which was ordered.   Tr. 482, 485.   It was also suggested that she work on losing weight and reducing her body mass index to address her blood pressure.   Tr. 482.

### B.  Kitt's Subjective Complaints of Pain

Kitt completed an Adult Function Report on October 23, 2018, as part of the administrative development of her claim.   Tr. 197.   Kitt stated she could not work due to the pain she experienced when she stood or sat for any length of time.   Tr. 197.   Kitt stated she could not cook much and needed the help of her adult daughter to do laundry and help around the house.   Tr. 199.   Kitt reported she can walk about half a block before needing to rest for about ten minutes.   Tr. 202.   Kitt also stated she uses a walker intermittently and uses a walker or a cane when her pain is aggravated.   Tr. 203.

At the hearing, Kitt told the ALJ she is unable to continue working due to back  pain and the doctor told her she had sciatica.   Tr. 37.   Although Kitt stated the pain keeps her from sitting for long, her typical day, as discussed more below,

includes a lot of sitting.  Tr. 37.  Kitt reported the doctor told her she needed back surgery, although there is no indication of same in the medical records.  Tr. 39.  In the meantime, Kitt is taking medications,[5] which she says "work pretty good".  Tr. 39.

Kitt also complained of gout in her feet and arthritis in her legs as interfering with her ability to work.  Tr. 39.  Kitt takes medications for those issues and testified the medications help for about four (4) hours.  Tr. 39, 44.  She takes the medication twice per day and has never asked her doctor if she can increase the dosage to get better results.  Tr. 40.  On questioning from counsel, Kitt testified she also experiences numbness with her left hand "from time to time" because of her prior hematoma.  Tr. 46.

On a typical day, Kitt wakes up at 6:00 in the morning, cooks breakfast (usually toast and an egg and sausage), makes a cup of coffee, and sits down to have breakfast.  Tr. 40.  When she is done with breakfast, she sits in her chair and watches TV.  Tr. 40.  Then, she will try to get up and dust for about 10-15 minutes before sitting back down and watching more TV.  Tr. 40.  By then, it is generally about noon and she will fix a sandwich with some chips before watching some more TV.  Tr. 40.  After about 30-45 minutes, she will get up and fix her bed,

---

[5] Kitt takes Amlodipine and Hydrochlorothiazide for hypertension; Famotidine for indigestion, Trazodone for insomnia; Mobic and Baclofen for sciatica; Alopurinol and Indomethacin for gout and arthritis; and Ventolin and Advair for asthma.  Tr. 38-39.

straighten her bedroom and then sit down and watch tv the rest of the day.  Tr. 41.

For dinner, she will make frozen meals.  Tr. 41.

Kitt's daughter comes and picks up her clothes for washing and will also take her out to eat about once a week.  Tr. 42.  During questioning by counsel, Kitt told the ALJ she could walk for half a block before requiring a break, stand for 30-45 mins, and sit for 45-50 minutes.  Tr. 47.

## II.    FINDINGS OF THE ALJ

In her written decision, the ALJ made the following findings relative to the issues raised in this appeal:

- Kitt had the following severe impairments through March 31, 2019, the date last insured: gout; arthritis; hypertension; mild osteoarthritis left wrist; asthma; sciatica; chronic pancreatitis with nausea; history of subdural hematoma with residual left hemiparesis; lumbar spine spurring; moderate subarticular sclerosis and mild spurring S1 joint suggesting chronic arthropathy; obesity.  Tr. 17.

- Kitt has the residual function capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b).  Specifically, Kitt can occasionally lift and carry up to 20 pounds, frequently up to 10 pounds.  Kitt can stand and walk for six hours in an eight hour workday, and sit of six hours with customary breaks.  Kitt should never climb ladders, ropes, or scaffolds, or ramps and stairs except to enter and exit the workplace.  She could frequently balance, stoop, kneel, crouch, and crawl.  She should not work around extreme heat, cold, wetness, humidity, caustic chemical fumes, or gasses.  She is precluded from work at unprotected heights and from driving or operating heavy, moving machinery where the entire apparatus moves.  She should only occasionally operate  leg/foot controls.  She can frequently handle, finger, and feel with the left dominant hand. There are no limitations on right nondominant hand.  Tr. 18.

- Kitt has not been under a disability, as defined in the Act, at any time from August 31, 2017, the alleged onset date, through March 31, 2019, the date last insured.  Tr. 24.

## III.   STANDARD OF REVIEW

Pursuant to 20 C.F.R. § 404.1520(a), the Commissioner analyzes a disability claim in five (5) steps:

1.    If the claimant is performing substantial gainful activity, she is not disabled.

2.    If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3.    If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least 12 months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.    If the claimant's impairments do not prevent her from performing her past relevant work, she is not disabled.[6]

5.    Even if the claimant's impairments prevent her from performing her past relevant work, if other jobs exist in significant numbers in the national

---

[6] "[C]laimant bears the initial burden of establishing a severe impairment that keeps [her] from performing [her] past work." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

economy that accommodate the claimant' s RFC and vocational factors, she is not disabled.

A federal court reviews the "Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. *See Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

When reviewing a Social Security disability case, the court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner.]'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also*

*Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings.") (citing *Black Diamond Coal Min. Co. v. Dir., OWCP*, 95 F.3d 1079, 1082 (11th Cir. 1996)). The reviewing court, however, may not look "only to those parts of the record which support the ALJ[,]" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). Review is deferential to a point, but the reviewing court conducts what has been referred to as "an independent review of the record." *Flynn v. Heckler*, 768 F.2d 1273, 1273 (11th Cir. 1985).

The Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability, the physical or mental impairment must be so severe the plaintiff not only is unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423(d)(2)(A).

## IV.    DISCUSSION

As stated above, Kitt argues on appeal that the ALJ erred in discrediting her testimony regarding the severity, limiting effects, and persistence of her symptoms. Reviewing the record, however, the undersigned finds no error in the ALJ's credibility determination.

### A.    Legal Standard

"[P]ain alone can be disabling, even when its existence is unsupported by objective evidence." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). Accordingly, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Id.* Thus, to establish a disability based on testimony of pain and other symptoms, the claimant must show "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (b) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002); 20 C.F.R. § 404.1529(a); *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

Thus, once a medically determinable condition is identified, the ALJ must then "evaluate the intensity, persistence and functionally limiting effects of the symptoms to determine the extent to which the symptoms affect claimant's

capacity for work." *Qualls v. Astrue*, 428 F. App'x 841, 845 (11th Cir. 2011) (citing 20 C.F.R. § 404.1529(c)(1)). "In evaluating the intensity and persistence of a claimant's symptoms, the ALJ considers the entire record, including the objective medical evidence, the claimant's history, and statements of the claimant and her doctors." *Meehan v. Comm'r of Soc. Sec.*, 776 F. App'x 599, 603 (11th Cir. 2019). Factors the ALJ may consider in assessing a claimant's complaints include:

> (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms, (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of the claimant's medication; (5) any treatment other than medication; (6) any measures the claimant used to relieve her pain or symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions.

*Id.*; *see also Soc. Sec. Ruling 16-3p; Titles II & Xvi: Evaluation of Symptoms in Disability Claims*, SSR 16-3P (S.S.A. Mar. 24, 2016).

If an ALJ discredits a claimant's allegations of pain, the ALJ must clearly articulate adequate reasons for doing so. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Foote*, 67 F.3d at 1561-62). The reasons articulated for disregarding the plaintiff's subjective testimony must be based on substantial evidence. *See Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991). The court "will not disturb a clearly articulated" finding about subjective complaints "supported by substantial evidence." *Mitchell v. Comm'r., Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). In determining whether

substantial evidence supports an ALJ's credibility determination, "[t]he question is not . . . whether [the] ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

## B. Analysis

Although the ALJ determined Kitt suffered from several impairments that could reasonably produce the symptoms complained of, the ALJ discounted Kitt's subjective allegations regarding the intensity, persistence, and limiting effects of her symptoms as "not entirely consistent with the medical evidence and other evidence in the record." Tr. 29. The ALJ articulated the following reasons for her decision: (1) Kitt has a history of minimal, generally conservative treatment and (2) Kitt's objective findings have been mild and her physical examinations mostly within normal limits. Tr. 22.

For the reasons discussed below, the undersigned finds the ALJ has articulated explicit and adequate reasons for discrediting Kitt's testimony and those reasons are supported by substantial evidence. *See Yanes v. Comm'r., Soc. Sec. Admin.,* -- F. App'x --, 2021 WL 2982084, at *7 (11th Cir. July 15, 2021) ("The ALJ made a clearly articulated credibility finding and pointed to specific reasons for discounting [claimant]'s subjective testimony . . . namely that it was internally inconsistent, inconsistent with his wife's testimony, and inconsistent with the

available evidence in the record"); *Stowe v. Soc. Sec. Admin., Comm'r*, -- F. App'x

--, 2021 WL 2912477 (11th Cir. July 12, 2021) ("We therefore decline to disturb

the ALJ's credibility finding, as there is substantial evidence in the record.").

### 1.    Kitt Received Conservative Treatment

The first reason the ALJ gave for discrediting Kitt's subjective complaints

was because they were contrary to the fact that Kitt has received only minimal

treatment for her impairments.  An ALJ may "consider the level or frequency of

treatment when evaluating the severity of a claimant's condition."  *Sonya E. v.

Saul*, 446 F. Supp. 3d 1287, 1298 (N.D. Ga. 2020) (quoting *Henry v. Comm'r of

Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).  Also, an ALJ may find

conservative treatment where a treating physician did not a recommend more

frequent or intense treatment plan than regular follow up visits regarding

medication management.  *Id.* at 1298 (citing *Horowitz v. Comm'r of Soc. Sec.*, 688

F. App'x 855, 862 n.3 (11th Cir. 2017)). A finding of conservative treatment may

negate a claimant's subjective statements of pain.  *Wolfe v. Chater*, 86 F.3d 1072,

1078 (11th Cir. 1996).

The undersigned finds substantial evidence supports the ALJ's

determination that Kitt's conservative treatment negates her subjective complaints

of pain.  Other than the procedure Kitt underwent for her hematoma in November

2017 for her fall, Kitt was treated primarily with medications, including

Allopurinol and nonsteroidal anti-inflammatory drugs, such as Mobic and Baclofen. Tr. 21-22, 402, 448. Moreover, there is no evidence in the medical records indicating any additional or more aggressive treatment was required or even recommended. While Kitt testified at the hearing her doctor recommended surgery, there is no indication of that in the medical records. Instead, the recommended plan of treatment for Kitt with all her medical providers consisted of: (1) continuing on medications, medication management, or medication refills; (2) a recommendation that Kitt use assisted devices such as a shower chair, roller or cane, or (3) counseling with Kitt to stop alcohol use, tobacco use, and lose weight.

Kitt argues, nonetheless, that the ALJ erred in relying on conservative treatment because, in doing so, she did not consider Kitt's inability to pay for additional treatment due to lack of insurance or funds. Although failure to seek treatment can be used as a basis for discounting subjective complaints of pain, *Watson v. Heckler*, 738 F.2d 1169 (11th Cir. 1984), "poverty excuses non-compliance," *Dawkins v. Bowen,* 848 F.2d 1211, 1213 (11th Cir. 1988). Thus, "when an ALJ relies on noncompliance as the sole ground for denial of disability benefits, and the record contains evidence showing that the claimant is financially unable to comply with prescribed treatment, the ALJ is required to determine

whether the claimant was able to afford the prescribed treatment." *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003).

In this case, however, Kitt's argument fails for two (2) reasons. First, the ALJ did consider Kitt's claim that she lacked insurance or funds and found a lack of evidence Kitt unsuccessfully attempted to get medications or treatment at lower or no cost. Tr. 22. Also, while there may have been some gaps in Kitt's medications, the record shows that, for the most part, Kitt was able to obtain medications, see medical providers, as needed, and receive medical equipment, as needed. Second, as stated above, the record is devoid of any indication that more aggressive treatment was recommended.

Kitt relies primarily on one statement made by a medical provider at Escambia Community Clinic in March 2017 (prior to her onset date) to dispute the ALJ's determination. Specifically, on March 24, 2017, medical provider Merold told Kitt to try an over the counter lidocaine patch for her pain, and if the pain did not improve, an MRI would be necessary and *if* they did an MRI and found anything in Kitt's back, it is not likely that the Escambia Community Clinic could do anything for her without having insurance. Tr. 406. Merold's statement does not indicate that additional treatment was in fact necessary or ultimately unavailable.

To the contrary, the record shows no additional treatment was necessary because after March 24, 2017, Kitt continued to be treated with medications and Kitt testified at the hearing the medications worked – they provided her with at least four (4) hours of relief. Indeed, during her April 2019 visit at Community Health, the most recent from the hearing, Kitt was continued on her medications, an x-ray was ordered, and it was suggested she work on losing weight and reducing her body mass index.

Furthermore, a review of the record shows that Kitt mentions not taking medication due to lack of insurance only once in April 2018, during her disability examination. Otherwise, Kitt reported being on medications. She requested or got medications refilled in September and December 2018, as well as April 2019. Also, at the time of the hearing Kitt stated she was taking her medications and they were helping. Kitt also had access to treatment at two community clinics. Tr. 448-55.

Instead of relying on her post-onset date records, Kitt relies heavily on her pre-onset date records. The ALJ also considered those records and explained in detail why those records also show only conservative treatment was recommended. Tr. 19-20. Kitt has pointed to no evidence to undermine the ALJ's findings. The evidence Kitt relies on from her treatment records do not show that she was denied or had no access to treatment. Kitt admits, for example, that when she asked for an

x-ray to be performed in March 2017 at Sacred Heart, an x-ray was performed. ECF Doc. 16 at 14.  Kitt takes issue with only being given a walker and a referral for one physical therapy visit at her discharge in November 2017 from Baptist after her fall, but there is no indication anything more was needed.

When she was discharged in November 2017 from Baptist, she exhibited normal strength in all areas except her left side, which showed only a minimal decrease.  She had a GCS of 15 throughout her stay.  Finally, Kitt's complaint that she "may not" have been able to get a shower chair form Goodwill is merely speculative.  ECF Doc. 16 at 14.  Completely missing from Kitt's argument is what treatment was needed, how or when she was denied the treatment because of lack of funds, and who recommended such treatment.  Thus, the undersigned finds the ALJ's determination that conservative treatment negated Kitt's subjective symptoms of pain to be supported by substantial evidence.

> 2.    Kitt's Subjective Symptoms Are Not Supported By the Objective Evidence

As stated above, the ALJ also discredited Kitt's subjective symptoms of pain because they are not supported by the objective evidence.  Specifically, the ALJ found that Kitt's physical examinations showed Kitt was "largely within normal limits".  The undersigned finds the ALJ's determination to be supported by substantial evidence.

The ALJ pointed to numerous facts in the record to support her determination. She discussed in depth the objective findings from the records both pre and post-onset date. The ALJ notes, for example, that other than as to her left wrist, Kitt's strength, grip, and range of motion were within normal limits. Tr. 19-22. The record indicates that Kitt has never appeared to be in acute distress, that Kitt's hypertension was noted to be in control, and that Kitt's strength and reflexes were normal in her physical exam. Tr. 19-21, 436-37, 453-54.

Where the ALJ offers specific reasons supported by substantial evidence for finding a claimant's testimony to be inconsistent with the objective evidence in the record, the ALJ's decision must be affirmed. *See Mitchell v. Comm'r, SSA*, 771 F.3d 780, 782 (11th Cir. 2014) (stating "we will not disturb a clearly articulated credibility finding supported by substantial evidence."); *Yanes*, -- F. App'x --, 2021 WL 2982084, at *7 (11th Cir. July 15, 2021) ("The ALJ made a clearly articulated credibility finding and pointed to specific reasons for discounting [claimant]'s subjective testimony . . . namely that it was internally inconsistent, inconsistent with his wife's testimony, and inconsistent with the available evidence in the record"); *Stowe*, -- F. App'x --, 2021 WL 2912477 (11th Cir. July 12, 2021) ("We therefore decline to disturb the ALJ's credibility finding, as there is substantial evidence in the record."). Thus, the undersigned finds the ALJ has articulated explicit and adequate reasons for discrediting Kitt's testimony, which

are supported by substantial evidence and, thus, finds no error in the ALJ's determination.

Kitt argues the ALJ's determination, however, was not supported by substantial evidence because the ALJ did not consider the evidence from the disability examination in April 2018. Namely, Kitt argues the ALJ should have equated a reduction of strength in Kitt's left wrist to 20% of her exertional or endurance capacity and failed to consider the fact that Kitt displayed no reflex response in her legs. ECF Doc. 16 at 17. The undersigned disagrees.

The ALJ did consider the April 2018 examination and discussed it at length in the written decision. Tr. 21. The ALJ noted Kitt's reflexes were "0 in the bilateral lower extremities," but that her sensory was normal. Tr. 21. The ALJ noted that Kitt had a reduced left grip strength of 4/5 and normal strength in her right grip and bilateral lower extremities. Tr. 21. Despite these limitations, the examination showed Kitt's gait, station and speed were normal; she was able to squat, bend at the waist and had normal straight leg raise both sitting and supine; she had normal much strength and tone and no atrophy. Tr. 21. In short, the record shows Kitt's physical exam and range of motion were entirely within normal limits. Tr. 431, 434-37.

Accordingly, the undersigned RESPECTFULLY RECOMMENDS,

1.    The decision of the Commissioner be AFFIRMED and Kitt's application for Disability Insurance Benefits be DENIED.

2.    The clerk be directed to enter judgment in favor of the Commissioner and close the file.

DONE at Pensacola, Florida, this 12th day of November, 2021.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation.  Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.  An objecting party must serve a copy of its objections upon all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.